## UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF MICHIGAN
## LANSING DIVISION

**AIR LIFT COMPANY**,

        Plaintiff,

v.

**BAG RIDERS, LLC**

        Defendant.

Case No. 25-cv-01356

**COMPLAINT**

**JURY TRIAL DEMANDED**

## COMPLAINT

Plaintiff Air Lift Company ("Air Lift" or "Plaintiff"), by and through its undersigned counsel, for its Complaint against Defendant Bag Riders, LLC ("Bag Riders" or "Defendant"), states as follows:

## NATURE OF THE ACTION

1.      This is a civil action arising from Bag Riders' willful patent infringement, breach of contract, and tortious conduct that has damaged Air Lift.

2.      Founded in 1949 and located in Lansing, Michigan, Air Lift has – for more than 70 years – been a market leader in innovating, designing, manufacturing, and distributing aftermarket air suspension products and systems.

3.      Among its many innovations, Air Lift developed a modular control system that electronically manages vehicle suspension pressure, height, and ride dynamics. The United States Patent and Trademark Office duly issued U.S. Patent No. 9,440,506 (the "'506 Patent") to Air Lift for that invention.

1

4.      Air Lift sells, throughout the United States, control units embodying the '506 Patent under the brand names AIR LIFT, AIR LIFT PERFORMANCE, 3P, 3H, and ALP4.

5.      Building on Air Lift's long history of innovation, Bag Riders – a Vermont company that formerly served as an "Authorized Distributor" of Air Lift pursuant to the North American Authorized Distributor Agreement (the "Distributor Agreement") – breached its contractual and legal obligations to Air Lift while nonetheless continuing to sell Air Lift's patented control systems.

6.      Instead of promoting Air Lift's products and honoring its commitments to Air Lift, Bag Riders – while still selling Air Lift's patented control units – engaged in the following unlawful acts: (a) developed, marketed, and sold its own competing and infringing product known as the "PRO Control System"; (b) publicly disparaged Air Lift and its patented products despite the Distributor Agreement's express prohibition against disparagement; and (c) misused and disclosed Air Lift's confidential and proprietary information.

7.      Despite its contractual relationship with Air Lift, Bag Riders never sought Air Lift's approval either (a) to sell the PRO Control System while simultaneously selling Air Lift's patented control system, known as "Air Lift Performance 3H and 3P Air Management Systems," or (b) to publish the disparaging video targeting Air Lift and its patented Air Lift Performance 3H and 3P Air Management Systems.

8.      Despite Bag Riders' unlawful conduct, Air Lift attempted to resolve this matter without litigation. While Bag Riders acknowledged its disparagement by removing the offending video posted to YouTube, Bag Riders has nevertheless taken the position that it may continue distributing its competing and infringing "PRO Control System" while simultaneously selling Air Lift's patented Air Lift Performance 3H and 3P Air Management Systems.

37073121.1

9.      Because Bag Riders disparaged Air Lift and the patented Air Lift Performance 3H and 3P Air Management Systems that Bag Riders was obligated to sell, and because Bag Riders refused to discontinue its infringing "PRO Control System" while simultaneously selling Air Lift's patented Air Lift Performance 3H and 3P Air Management Systems under the Distributor Agreement, Air Lift was left with no choice but to defend its rights and file this complaint.

10.     Through this action, Air Lift seeks to protect its intellectual property rights, contractual interests, and business reputation from its former Authorized Distributor. Air Lift seeks injunctive relief prohibiting further infringement and misuse, compensatory and enhanced damages for Bag Riders' breaches and willful and deliberate infringement, attorneys' fees and costs, and such other relief as the Court deems just and proper.

<u>**PARTIES**</u>

11.     Plaintiff Air Lift is a corporation organized and existing under the laws of the State of Michigan, with its principal place of business located at 2727 Snow Road, Lansing, Michigan 48917. Air Lift is one of North America's leading manufacturers of aftermarket air suspension systems, control units, and related components for passenger, commercial, and performance vehicles.

12.     Defendant Bag Riders is a limited liability company organized and existing under the laws of the State of Vermont, with its principal place of business located at 347 Shunpike Road, Williston, Vermont 05495. Upon information and belief, Bag Riders conducts business throughout the United States, including in Michigan, by marketing, selling, and distributing aftermarket suspension products and components – including its competing and infringing PRO Control System.

37073121.1

## JURISDICTION AND VENUE

13.     This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C.

§§ 1331 and 1338(a) because Air Lift asserts claims arising under the patent laws of the United

States, 35 U.S.C. § 1 et seq. The Court also has supplemental jurisdiction over Air Lift's related

state law claims under 28 U.S.C. § 1367 because those claims form part of the same case or

controversy as the federal patent claims.

14.     This Court has personal jurisdiction over Bag Riders because Bag Riders

expressly consented to personal jurisdiction in Michigan and to exclusive adjudication in the

United States District Court for the Western District of Michigan, as provided in Section 13 of the

parties' Distributor Agreement, which provides in relevant part:

> This Agreement shall be deemed to have been entered into and fully performed
> in the State of Michigan and shall be governed by and construed in accordance
> with the laws of the State of Michigan … Distributor agrees that all
> controversies, disputes and claims arising out of this Agreement shall be
> adjudicated exclusively by a court … within Eaton County, State of Michigan
> or the United States District Court for the Western District of Michigan …
> Distributor irrevocably consents to the jurisdiction and venue of the state and
> federal courts of Michigan and waives any rights to seek a transfer of venue for
> any reason or to claim that the forum is inconvenient.

15.     Bag Riders also has sufficient minimum contacts with the State of Michigan. Bag

Riders purposefully availed itself of the privilege of conducting business in this State by (a)

entering into an ongoing distributorship with Air Lift, a Michigan corporation headquartered in

Eaton County; (b) selling and marketing products within Michigan; and (c) engaging in conduct

causing injury to Air Lift in this District.

16.     Venue is proper in this District under 28 U.S.C. §§ 1391(b) and 1400(b) because

Bag Riders consented to venue in this District pursuant to Section 13 of the Distributor Agreement.

Venue is also proper because a substantial part of the events and omissions giving rise to Air Lift's

37073121.1

claims (including execution and performance of the Distributor Agreement, development and sale of infringing products, and harm to Air Lift's business and reputation) occurred within this District.

17.    Assignment to the Southern Division (Lansing) of the Western District of Michigan is proper because of Section 13 of the Distributor Agreement, Air Lift's principal place of business is located in Eaton County, Michigan, and a substantial part of the acts and injuries giving rise to this action occurred here.

## STATEMENT OF FACTS
### *Air Lift and the '506 Patent*

18.    Air Lift is one of North America's leading manufacturers of air suspension systems, control units, and related components for passenger, commercial, and performance vehicles. For decades, Air Lift has designed, produced, manufactured, distributed, and marketed high-quality suspension systems and accessories for its authorized dealers, distributors, and customers.

19.    Air Lift is committed to delivering cutting-edge, best-in-class products to its customers. Through continuous investment in research and development, Air Lift maintains a strong portfolio of patents and innovative technologies.

20.    Among these innovations, Air Lift developed a modular control system that integrates aftermarket suspension components with electronic components to manage suspension pressure, height, and ride dynamics.

21.    To protect this technology, Air Lift obtained the '506 Patent, entitled "Modular Control System."

22.    The '506 Patent was duly and legally issued by the United States Patent and Trademark Office on September 13, 2016, and remains valid and enforceable. (Ex. A)

23.     Since at least October 2017, Air Lift has consistently marked its patented control units and related products with the patent numbers covering them, in compliance with 35 U.S.C. § 287(a), as shown below:



24.     Upon information and belief, Bag Riders has had knowledge of the '506 Patent since at least September 13, 2016, and by no later than October 2017.

### *The Distributor Agreement*

25.     On December 14, 2014, Air Lift and Bag Riders entered into a Distributor Agreement, appointing Bag Riders as an Authorized Distributor in North America.

26.     The Distributor Agreement is a valid and enforceable contract supported by consideration and automatically renews for consecutive one-year terms as long as Bag Riders complies with its terms and maintains Air Lift's required standards of conduct.

27.     The Distributor Agreement defines Bag Riders' obligations to uphold Air Lift's brand reputation and ensure fair and lawful business practices. Among other provisions, Bag Riders agreed and acknowledged at Section 3, in relevant part, to:

> e. conduct and maintain at all times its operation in compliance with all applicable Federal and State Laws …. [and] not … engage in any unfair or deceptive trade practices; …

* * *

h. not make any representations or warranties concerning the Products except as approved in writing by Air Lift; …

* * *

k. maintain and protect the viability of the Air Lift distribution network … and the image and reputation of Air Lift and the Products; …

* * *

n. preserve and enhance the reputation and goodwill of Air Lift and the Products and avoid any illegal or unethical actions, including without limitation 'bait and switch' practices; …

28.    To protect Air Lift's rights in intellectual property, the Distributor Agreement strictly restricted Bag Riders' use of Air Lift's intellectual property at Section 2(B), as follows:

(iv) Distributor shall have no right, title, or interest in the Licensed IP. All use of the Licensed IP and the goodwill associated therewith shall inure to the benefit of Air Lift. Distributor shall not do anything inconsistent with Air Lift's ownership of the Licensed IP.

29.    Likewise, to protect Air Lift's brand and reputation, the Distributor Agreement prohibits Bag Riders from using Air Lift's intellectual property in any manner that disparages or diminishes Air Lift or its products, stating in Section 2(B) that:

(v) Distributor shall not use the Licensed IP in a manner that disparages Air Lift or the Products, blurs, dilutes or otherwise diminishes the Licensed IP, or portrays Air Lift or the Products in a false, competitively adverse or poor light.

30.    Finally, to protect the confidentiality of proprietary business information, Section 15 of the Distributor Agreement provides, in part, that:

… any Confidential Information received or obtained from the other party will be the sole and exclusive property of the other party and may not be used, disseminated or disclosed except as may be necessary to perform the obligations required under this Agreement or as may be required by law.

### *Bag Riders' Infringement of the '506 Patent*

31.    Bag Riders has made, used, sold, and offered to sell, and continues to make, use, sell, and offer to sell, products, that infringe the '506 Patent, including Bag Riders' PRO Control System.

### *Bag Riders' Public Disparagement of Air Lift*

32.    On August 27, 2025, an individual identifying himself as "John" posted a video (the "Video") to Bag Riders' official YouTube channel discussing Air Lift's products.

33.    The Video contained numerous false and misleading statements suggesting that Air Lift's newer products were of inferior quality, performance, and reliability compared to earlier models or competing systems.

34.    The Video was publicly accessible and widely shared through YouTube and social media, where it reached Air Lift's dealers, distributors, and customers.

35.    The Video undermined Air Lift's goodwill and reputation in the aftermarket suspension market.

### *Bag Riders' Misuse of Confidential Information*

36.    As an Authorized Distributor, Bag Riders had access to Air Lift's Confidential Information under Section 15 of the Distributor Agreement, including technical specifications, component sourcing, control logic, testing data, calibration methods, and marketing plans.

37.    In early 2025, Bag Riders' marketing materials began describing system features, performance characteristics, and terminology substantially similar to Air Lift's confidential and proprietary materials.

### *Cease and Desist Letter and Ongoing Misconduct*

38.    On or about September 26, 2025, counsel for Air Lift sent a Cease-and-Desist

Letter notifying Bag Riders of its contractual breaches, patent infringement, trade secret misuse, and public disparagement.

39.     The letter demanded that Bag Riders immediately: (a) cease all activities breaching the Distributor Agreement; (b) cease infringing Air Lift's intellectual property rights and pay a royalty for the infringing sales; (c) stop interfering with Air Lift's contractual relationships; and (d) remove all disparaging content or videos.

40.     Bag Riders responded that it would *not* stop selling the PRO Control System, refused to pay royalties or implement corrective measures, and merely removed the Video and claimed to have "terminated contact" that could raise confidentiality concerns. Bag Riders has continued all other infringing and tortious activities identified in the Cease-and-Desist Letter.

41.     On November 3, 2025, Air Lift formally terminated the Distributor Agreement effectively and immediately by written notice. (Ex. B)

## CAUSES OF ACTION

### COUNT I
### PATENT INFRINGEMENT

42.     Air Lift incorporates by reference all preceding paragraphs as though fully set forth herein.

43.     Bag Riders has and continues to directly and indirectly infringe, one or more claims of the '506 Patent in violation of 35 U.S.C. § 271, at least by making, using, selling, and offering to sell its aftermarket PRO Control System.

44.     As a non-limiting, illustrative example of how Bag Riders' PRO Control System infringes one or more claims of the '506 Patent, below is an infringement chart showing how, for example, the PRO Control System includes each and every limitation of at least claim 1 of the '506 Patent.

9

| '506 Patent Claim | Bag Riders PRO Control System |
|---|---|
| 1. A modular control system adapted to adjust an air suspension system in a vehicle the control system comprising: | The wiring and plumbing diagram of Bag Riders' PRO Control System is shown below:<br> |
| a vehicle head unit mounted in the vehicle and having a user interface | The head unit controller is mounted in the vehicle and the head unit controller has a digital user interface, as shown below:<br> |
| a vehicle engine control unit in communication with said vehicle head unit | The system's ignition (IGN +) and battery (+12 V Batt) connections place the head-unit controller in electrical communication with the vehicle's engine control unit, as shown below. |



| | The manifold – an aftermarket system component – is in communication with the head unit controller and with the aftermarket system that is connected to the vehicle, as shown below: |
|---|---|
| an aftermarket control unit in communication with said vehicle head unit and at least one aftermarket system connected to the vehicle |  |
| wherein upon interaction of a user at said user interface, said vehicle head | If the user presses a button on the head unit controller, the head unit controller sends a signal commanding the manifold – an aftermarket system component – to inflate or deflate the air springs, as shown below: |

| | |
|---|---|
| unit relays a system control signal to said at least one aftermarket control unit |  |
| | Head Unit Controller<br><br>Manifold<br><br>Air Springs |
| | <br><br>Left Front Corner Vehicle Air Pressure<br>Right Front Corner Vehicle Air Pressure<br>Left Back Corner Vehicle Air Pressure<br>Right Back Corner Vehicle Air Pressure<br>Head Unit Controller |
| wherein said at least one aftermarket control unit generates a return signal representative of a characteristic of said aftermarket system and communicates | The manifold reads pressure data from its sensors and transmits those values back to the controller, as shown below: |

| | |
|---|---|
| said return signal to said head unit |  |
| wherein said aftermarket system is an air suspension system | The wiring and plumbing include compressors, air tank, air lines, and air springs – collectively an aftermarket air suspension system, as shown below: |

<table>
<tr><td></td><td><br>Air Suspension System</td></tr>
<tr><td>wherein said characteristic of said aftermarket system is one of an air pressure or a suspension height</td><td>The aftermarket system monitors and displays individual air bag pressures, as shown below:<br><br>Head Unit Controller<br>Air Suspension System</td></tr>
</table>

37073121.1



Left Front Corner Vehicle Air Pressure

Right Front Corner Vehicle Air Pressure

Left Back Corner Vehicle Air Pressure

Right Back Corner Vehicle Air Pressure

Head Unit Controller

| wherein said aftermarket air control unit includes a housing with a plurality of air passages | The manifold is a housing with multiple internal air passages connecting valves and ports, as shown below:<br><br><br><br>Housing with Air Passages |
| --- | --- |



Housing with Air Passages

| | |
|---|---|
| an air pressure sensor in communication with one of said air passages generating an output representative of an air pressure achieved in one of said air passages | Air pressure sensors in the manifold measure the pressure in each air line and produce corresponding output of the air pressure in each air line, as shown below:<br><br><br><br>Manifold<br><br>Head Unit Controller<br><br>Air Lines |

| | |
|---|---|
| |  |

Left Front Corner Vehicle Air Pressure

Right Front Corner Vehicle Air Pressure

Left Back Corner Vehicle Air Pressure

Right Back Corner Vehicle Air Pressure

Head Unit Controller

| | |
|---|---|
| a plurality of valves on said housing | The manifold contains a plurality of valves, as shown below:  |

Housing with Valves

| | |
|---|---|
| said aftermarket control unit controlling said valves | The manifold controls the valves in response to signals from the head unit controller to regulate inflation and deflation, as shown below:<br><br> |
| wherein said user interface on said vehicle head unit displays information representative of said output representative of said air pressure | The user interface of the head unit controller displays real-time air pressure output for each circuit, directly representing the sensor outputs, as shown below:<br><br> |

46.    As shown above, Bag Riders' PRO Control System includes each of the limitations of one or more claims of the '506 Patent and therefore directly infringes the '506 Patent.

18

47.    Bag Riders has induced infringement of the '506 Patent at least because, with knowledge of the '506 Patent, it has intentionally and actively induced end users of the PRO Control System (through instructions, promotional materials, videos, and other documentation) to use the product in a manner that infringes the '506 Patent, with specific intent that they do so. This is especially true because Bag Riders was simultaneously selling Air Lift Performance 3H and 3P Air Management Systems covered under the '506 patent – which Bag Riders had full knowledge of as an Authorized Distributor of Air Lift.

48.    Bag Riders has further induced infringement by selling its PRO Control System to distributors, dealers, and resellers with the specific intent that they resell or install the PRO Control System for others in an infringing manner.

49.    Bag Riders' direct and indirect infringement of the '506 Patent was, and continues to be, willful and deliberate.

50.    As a direct and proximate result of Bag Riders' infringement, Air Lift has suffered and will continue to suffer damages, including loss of business, harm to reputation, and erosion of its competitive market position.

51.    Air Lift is entitled to recover compensatory damages adequate to compensate for Bag Riders' infringement, in no event less than a reasonable royalty, as well as treble damages under 35 U.S.C. § 284 for Bag Riders' willful infringement. Air Lift is further entitled to recover its reasonable attorneys' fees pursuant to 35 U.S.C. § 285, and to obtain preliminary and permanent injunctive relief under 35 U.S.C. § 283 enjoining Bag Riders from making, using, selling, or offering to sell any infringing products.

## COUNT II
## BREACH OF CONTRACT – DISPARAGEMENT

52.     Air Lift incorporates by reference all preceding paragraphs as though fully set forth herein.

53.     The Distributor Agreement between Air Lift and Bag Riders is a valid, binding, and enforceable contract supported by consideration.

54.     Under the Distributor Agreement, Bag Riders expressly agreed not to use Air Lift's licensed intellectual property in any manner that disparages Air Lift or its products, and to preserve and enhance Air Lift's image, reputation, and goodwill.

55.     Bag Riders breached the Distributor Agreement by making and publishing false, competitively adverse, and disparaging statements concerning Air Lift and its products, including statements contained in a publicly distributed YouTube video.

56.     As a direct and proximate result of Bag Riders' breaches, Air Lift has suffered and continues to suffer damages, including loss of goodwill, harm to its image and reputation, and lost sales and business opportunities, in an amount to be determined at trial.

57.     Air Lift is entitled to compensatory damages, together with attorneys' fees, costs, and injunctive relief prohibiting Bag Riders from further disparaging Air Lift or misusing any of Air Lift's intellectual property.

## COUNT III
## BREACH OF CONTRACT – CONFIDENTIAL INFORMATION

58.     Air Lift incorporates by reference all preceding paragraphs as though fully set forth herein.

59.     Under Section 15 of the Distributor Agreement, Bag Riders agreed and acknowledged that any Confidential Information received from Air Lift would remain Air Lift's

37073121.1

sole and exclusive property and could not be used, disseminated, or disclosed except as necessary to perform its contractual obligations.

60.    Bag Riders breached the Distributor Agreement by using and disclosing Air Lift's Confidential Information, including technical, design, and marketing data, for purposes unrelated to its performance under the Agreement and to benefit the development and marketing of its competing products, including the PRO Control System.

61.    As a direct and proximate result of Bag Riders' breaches, Air Lift has suffered and continues to suffer damages, including competitive harm, loss of proprietary advantage, and diminished goodwill, in an amount to be proven at trial.

62.    Air Lift is entitled to compensatory damages, attorneys' fees, costs, and injunctive relief prohibiting Bag Riders from further use or disclosure of Air Lift's Confidential Information.

## COUNT IV
## TORTIOUS INTERFERENCE

63.    Air Lift incorporates by reference all preceding paragraphs as though fully set forth herein.

64.    Air Lift maintains valid and enforceable contractual relationships with its employees, dealers, and distributors, as well as ongoing business relationships with customers and partners in the aftermarket suspension market, of which Bag Riders knew or should have known.

65.    Bag Riders intentionally and improperly interfered with those relationships by attempting to obtain and use Air Lift's confidential and proprietary information to advance its competing business interests, without privilege or justification and with willful, malicious intent to gain an unfair competitive advantage.

66.    Bag Riders' conduct was without privilege or justification and was undertaken willfully and maliciously to gain an unfair competitive advantage over Air Lift.

37073121.1

67.     As a direct and proximate result of Bag Riders' interference, Air Lift has suffered damages, including loss of goodwill, disruption of business relationships, and competitive harm.

68.     Air Lift is entitled to recover compensatory and punitive damages, together with attorneys' fees, costs, and such other and further relief as the Court deems just and proper.

## COUNT V
## COMMERCIAL DISPARAGEMENT

69.     Air Lift incorporates by reference all preceding paragraphs as though fully set forth herein.

70.     Bag Riders published and disseminated false and misleading statements about Air Lift and its products through online videos and promotional materials directed to the public and to Air Lift's customers, dealers, and distributors.

71.     These statements falsely conveyed that Air Lift's products were inferior in quality, performance, and reliability compared to prior models or competing systems, and were made knowingly or with reckless disregard for the truth.

72.     Bag Riders made and distributed the statements to influence customers, dealers, and distributors and to divert sales from Air Lift to its own competing products.

73.     The false statements were widely disseminated and caused actual harm to Air Lift's business reputation, goodwill, and sales.

74.     As a direct and proximate result of Bag Riders' conduct, Air Lift has suffered damages, including lost business opportunities, reputational injury, and other consequential damages in an amount to be determined at trial.

75.     Bag Riders' conduct was willful, malicious, and in conscious disregard of Air Lift's rights, entitling Air Lift to compensatory and punitive damages, attorneys' fees, costs, and

injunctive relief prohibiting further publication or dissemination of false or misleading statements about Air Lift or its products.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff Air Lift Company seeks judgment in its favor and against Defendant Bag Riders, LLC, and respectfully requests that this Honorable Court enter an Order as follows:

A.      Granting equitable relief enjoining Defendant from continuing the wrongful conduct complained of herein, including the manufacture, marketing, and sale of infringing products, the unauthorized use or disclosure of Air Lift's Confidential Information, and the dissemination of false or misleading statements concerning Air Lift or its products;

B.      Granting equitable relief compelling Defendant to comply with its contractual obligations under the Distributor Agreement, to cease all unauthorized use of Air Lift's intellectual property, and to return or destroy any confidential or proprietary materials obtained from Air Lift;

C.      Granting equitable relief requiring restitution and disgorgement of all revenues, profits, and other benefits wrongfully obtained as a result of Defendant's infringement, contractual breaches, and other wrongful conduct;

D.      Entering judgment that Defendant has directly and indirectly infringed, and continues to infringe, one or more claims of U.S. Patent No. 9,440,506, and enjoining Defendant, its officers, employees, affiliates, agents, distributors, and those acting in concert with them, from making, using, selling, offering to sell, or importing any product that infringes the '506 Patent;

E.      Awarding Plaintiff compensatory damages in an amount to be proven at trial, including damages for lost sales, reputational injury, loss of goodwill, and other consequential harm resulting from Defendant's conduct;

37073121.1

F.      Awarding Plaintiff enhanced and treble damages under 35 U.S.C. § 284 for Defendant's willful patent infringement, as allowable by law;

G.      Awarding Plaintiff punitive damages as allowable by law for Defendant's willful, malicious, and bad faith conduct;

H.      Awarding Plaintiff attorneys' fees, expert witness fees, litigation expenses, and costs, as permitted under 35 U.S.C. § 285 and other applicable law;

I.      Awarding Plaintiff pre- and post-judgment interest on all monetary amounts awarded, at the maximum lawful rates; and

J.      Granting such other and further relief as this Court may deem just, equitable, and proper.

## JURY TRIAL DEMANDED

Plaintiff demands a trial by jury of all claims in this Complaint so triable.

Dated: November 4, 2025                    Respectfully submitted,

/s/ Mitchell A. Capp
Mitchell A. Capp (P84197)
**MCDONALD HOPKINS PLC**
39533 Woodward Ave., Ste. 318
Bloomfield Hills, MI 48304
Tel: (248) 656-5070 / Fax: (248) 646-5075
Email: mcapp@mcdonaldhopkins.com

*Counsel for Plaintiff Air Lift Company*