**UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF MICHIGAN**
**LANSING DIVISION**

| | |
|---|---|
| **AIR LIFT COMPANY**<br><br>Plaintiff,<br><br>v.<br><br>**BAG RIDERS, LLC**<br><br>Defendant. | **Case No. 1:25-cv-01356-RJJ-SJB**<br><br>**HON. ROBERT J. JONKER** |

**AIR LIFT COMPANY'S RESPONSIVE CLAIM CONSTRUCTION BRIEF**

## I. INTRODUCTION

Claim construction is intended to assist a factfinder to understand the meaning of claim language, not replace claim terms with lengthy and narrowing limitations. The Federal Circuit consistently holds that the latter is reversible legal error. Bag Riders' opening brief confirms what Air Lift's opening brief states: Bag Riders' proposals seek to narrow—not define—the claimed terms in a manner not supported by intrinsic evidence. Bag Riders' does not cite to intrinsice evidence that would support narrowing the ordinary meaning of those terms. Bag Riders' brief does so to advance incorrect non-infringement arguments rather than properly define those terms.

Bag Riders also relies on the eight-paragraph conclusory report of putative expert, Jeremy Amundson, who Bag Riders disclosed for the first time in its brief. As a threshold matter, the Court should exclude and refuse to consider Amundson's opinions because Bag Riders did not comply with Rule 26(a)(2)(B) by omitting: (1) Amundson's CV and qualifications; (2) the compensation to be paid for his study and testimony; and (3) a list of all cases in which Amundson testified as an expert at trial or by deposition the preceding four years.

Even if the Court were to consider Amundson, his conclusory opinions give the Court nothing to consider. Amundson restates the same proposals as Bag Riders does, but does not provide any explanation why they are correct or cite any supporting intrinsic or extrinsic evidence. ECF 30-1, ¶ 6. Worse yet, for "vehicle engine control unit," Amundson provides a different conclusory proposed construction than does Bag Riders, which is proof that Bag Riders' proposed construction for that term is incorrect. ECF 30-1, ¶ 7. Amundson also provides no opinion of who a "person of ordinary skill in the art" is, and whether he meets that definition. Bag Riders' reliance on Amundson confirms Bag Riders' lack of evidence supporting its improper proposed constructions. The Court should reject them in their entirety.

## II. ARGUMENT

### A. "Mounted" Needs No Construction

Air Lift identified in its opening brief that "mounted" needs no construction and there is no intrinsic evidence that requires some special meaning for that term. ECF 29, 7–9. Bag Riders' brief confirms this. ECF 30, 8–9. Bag Riders' entire argument is one sentence, and does not cite any intrinsic evidence to support its 21-word proposed construction. *Id.* This confirms that no intrinsic evidence supports Bag Riders' proposal. ECF 29, 7–9.

Bag Riders also fails to explain why the Court must construe this term. ECF 30, 8–9. This also confirms that no construction is necessary.

Bag Riders' only citation is to "Exhibit A, Expert Witness Affidavit", which is Amundson's report. *Id.* at 9. Bag Riders, however, does not cite any paragraph or page of Amundson's report. *Id.* And a review of Amundson's report shows that he merely repeats Bag Riders' proposal without citing any supporting evidence. ECF 30-1, ¶ 6(b). The Federal Circuit has instructed courts to discount expert testimony "that is clearly at odds with the claim construction mandated by the claims themselves, the written description, and the prosecution history, in other words, with the written record of the patent." *Phillips v. AWH Corp.*, 415 F.3d 1303, 1318 (Fed. Cir. 2005) (en banc). Therefore, the Court should reject Bag Riders' proposal for this term and decline to construe it.

### B. "In Communication With" Needs No Construction

Air Lift identified in its opening brief that "in communication with" needs no construction and that there is no intrinsic evidence that requires a special meaning for that term. ECF 29, 10–12. Bag Riders' brief confirms this. ECF 30, 9. Bag Riders' entire argument is a sentence long and

does not cite any intrinsic evidence to support its 23-word proposed construction. *Id.* This confirms that there is no intrinsic evidence supporting this improper proposal. ECF 29, 10–12.

Bag Riders also fails to explain why the Court must construe this term. ECF 30, 9. This too confirms no construction is necessary.

Bag Riders' only citation is to Amundson's report. *Id.* at 9. Bag Riders, however, does not cite any paragraph or page of Amundson's report. *Id.* And a review of Amundson's report shows that he merely repeats the proposed construction without citing any intrinsic or extrinsic evidence to support it. ECF 30-1, ¶ 6(d); *Phillips*, 415 F.3d at 1318 (quoting *Key Pharms.*, 161 F.3d at 716). Therefore, the Court should reject Bag Riders' proposal for this term and decline to construe it.

### C. "Control" Needs No Construction

Air Lift identified in its opening brief that "control" needs no construction and that there is no intrinsic evidence that requires some special meaning for that term. ECF 29, 13–15. Bag Riders' brief confirms this. ECF 30, 9. Bag Riders' entire argument is one sentence long and does not cite any intrinsic evidence to support its 18-word proposed construction. *Id.* This confirms there is no intrinsic evidence supporting this improper proposal. ECF 29, 13–15.

Bag Riders also fails to explain why the Court must construe this term. ECF 30, 9. This also confirms no construction is necessary.

Bag Riders' only citation is to Amundson's report. *Id.* at 9. Bag Riders, however, does not cite any paragraph or page of Amundson's report. *Id.* Amundson's report shows that he merely repeats the proposed construction without citing any intrinsic or extrinsic evidence to support it. ECF 30-1, ¶ 6(e); *Phillips*, 415 F.3d at 1318 (quoting *Key Pharms.*, 161 F.3d at 716). Therefore, the Court should reject Bag Riders' proposal for this term and decline to construe it.

### D. Bag Riders' Brief Confirms "Vehicle Head Unit" Needs No Construction

Air Lift identified that "vehicle head unit" requires no construction because it is readily apparent that Bag Riders' PRO control system includes a vehicle head unit. ECF 29, 15–16. Bag Riders confirms this by providing no explanation why construction is necessary or what issue it would resolve. ECF 30, 8. The Court should decline to construe this term on that first basis.

Bag Riders' only intrinsic evidence is a citation to one paragraph from the specification. ECF 30, 8 (citing '506 patent, col. 23, l. 59– col. 24, l. 6). Bag Riders, however, provides no explanation why its proposed construction includes the following terms when the cited specification passage mentions none of them:

- "single"
- "centralized"
- "electronic control system"
- "primary interface"
- "integrate"
- "manage"
- "infotainment features"
- "communication with a mobile telephone"
- "external device"

ECF 29, 16. The fact that Bag Riders' proposed construction includes at least 17 limiting words that appear nowhere in the cited intrinsic evidence confirms that its proposal is incorrect.

Bag Riders' citation further demonstrates why its proposed construction fails. The cited passage does not define the term "vehicle head unit." Instead, it repeatedly confirms that the described features are merely exemplary embodiments—not a required definition:

> Vehicle head units have evolved significantly in recent years, such that what was once exclusively a control center on the instrument panel for the vehicle stereo is now **generally capable** of controlling a wide variety of vehicle systems, **such as** the stereo, phone system, satellite radio, climate system, navigation system, DVD player and other "infotainment" options. The head unit **may include** both hardware and firmware for controlling the variety of systems. **In some cases**, the vehicle head unit is also **capable of** a wired or wireless connection to an external mobile device, **such as** a mobile phone and/or other mobile device, by a connection **such as** a Bluetooth connection or other similar connection. The head unit, when connected to a mobile device, **may be** operated to access and control certain systems on the mobile device, **such as** the phone and music.

ECF 30-2 ('506 patent, col. 23, l. 59–col. 24, l. 6) (emphasis added). The cited language is replete with permissive and exemplary language such as "generally capable," "may include," "in some cases," and "may be operated." *See, e.g.*, *Dealertrack, Inc. v. Huber*, 674 F.3d 1315, 1320–24 (Fed. Cir. 2012) (rejecting district court's limiting claim construction where described embodiments were preceded by permissive language such as "for example"); *Rexnord Corp. v. Laitram Corp.*, 274 F.3d 1336, 1345 (Fed. Cir. 2001) (rejecting the importation of limitation from embodiments where specification used permissive language such as "in one embodiment"); *SanDisk Corp. v. Memorex Prods., Inc.*, 415 F.3d 1278, 1284–85 (Fed. Cir. 2005) ("includes" is a non-limiting term). None of this language defines the term "vehicle head unit", and certainly not in the manner proposed by Bag Riders. *See Thorner v. Sony Computer Entertainment America LLC*, 669 F.3d 1362, 1365 (Fed. Cir. 2012) (requiring patentee "clearly set forth a definition" or "clearly express an intent to redefine the term" before departing from term's ordinary meaning).

Bag Riders also fails to address the intrinsic evidence that contradicts its incorrect proposed construction. ECF 29, 17. For example, claim 7, which depends from claim 1, identifies a vehicle audio system. If the Court were to adopt Bag Riders' proposal and require it in claim 1, it would render claim 7 meaningless. *Id.; see also Texas Instruments Inc. v. U.S. Int'l Trade Comm'n*, 988 F.2d 1165, 1171 (Fed. Cir. 1993) (declining to adopt construction that would render claim language "mere surplusage").

Likewise, Bag Riders fails to address the controlling precedent establishing that its attempt to limit "a vehicle head unit" to a ***single*** vehicle head unit is incorrect as a matter of law. ECF 29, 17. Controlling Federal Circuit precedent holds that the article "a" before "vehicle head unit" has the customary meaning "one or more." *KCJ Corp. v. Kinetic Concepts, Inc.*, 223 F.3d 1351, 1356

(Fed. Cir. 2000). Yet Bag Riders offers no evidence or legal analysis explaining why the Court should depart from that settled rule.

Bag Riders' citation to the conclusory Amundson report also does not support its proposed construction. ECF 30, 8. Again, Bag Riders does not provide any citation out of Amundson's report supporting its proposed construction. *Id.* A review of Amundson's report shows he merely restates Bag Riders' proposed construction without citing any evidence or explaining why it is correct. ECF 30-1, ¶ 6(a). Amundson's failure to cite any intrinsic or extrinsic evidence confirms that Bag Riders' proposed construction is incorrect.

Amundson's report confirms Bag Riders' proposed construction is incorrect in an additional way: Amundson provides his ***own*** 56-word proposed construction that is ***different*** than Bag Riders' proposal. ECF 30-1, ¶ 7 (Amundson providing different proposed construction). The fact that Amundson proposed his own construction—one different from Bag Riders'—validates that Bag Riders' proposed construction is incorrect. The Court should not adopt Amundson's alternative proposal because Bag Riders failed to timely disclose it. ECF 18 (proposed constructions due by May 29.) Regardless, Amundson's alternative fares no better than Bag Riders' proposal because it: (1) is conclusory; (2) contains no analysis, citations, or supporting evidence; (3) conflicts with the intrinsic record; and (4) seeks to import narrowing limitations into the term "vehicle head unit" that are found nowhere in the intrinsic evidence. Accordingly, the Court should reject Bag Riders' and Amundson's proposed constructions and decline to construe this term.

**E. "Vehicle Engine Control Unit" Needs No Construction**

Air Lift argues that no construction is necessary because Bag Riders' PRO control system connects to the ignition and to the battery, *i.e.*, an automobile's vehicle engine control unit

(VECU). ECF 29, 18–19. Bag Riders' brief confirms this by citing its own diagram showing its system connects to a vehicle's ignition and battery. ECF 30, 6–7.

Bag Riders then makes a fatally incorrect legal and factual argument: the claimed VECU must be in its PRO control system and not the vehicle itself:

- "*The accused product* does not perform any of the functions noted in the specification."
- "[The accused product] does not control air/fuel ratio, ignition timing, idle speed, or valve timing."
- "[The accused product] does not perform the functions of a VECU as described in Bag Riders' proposed construction."

ECF 30, 6 (emphasis added). Bag Riders' argument that the VECU must be internal to its PRO Control System is factually incorrect because the '506 Patent itself identifies the VECU as located in the vehicle—not the control system. Ironically, Bag Riders' sole citation to the '506 patent specification confirms this: "***VECUs***, also referred to as powertrain control modules, ***are common among today's vehicles***." ECF 30, 5 (citing '506 patent, col. 24, ll. 29–34) (emphasis added).

Bag Riders' argument is also legally incorrect because Bag Riders may be liable for direct, contributory, or induced infringement even if one or more claim limitations are satisfied by a component outside the accused PRO Control System with which the PRO Control System connects. *See, e.g.*, *Golden Blount, Inc. v. Robert H. Peterson Co.*, 438 F.3d 1354, 1362–65 (Fed. Cir. 2006) (affirming findings of direct, contributory, and induced infringement where accused product was combined with another component to form claimed apparatus); *Lifetime Indus., Inc. v. Trim-Lok, Inc.*, 869 F.3d 1372, 1378–79 (Fed. Cir. 2017) (defendant may infringe by installing accused product onto vehicle to create claimed combination). Because Bag Riders' reasoning for why construction is needed is incorrect, the Court should decline to construe this term.

It is telling that Amundson provides no opinion as to the location or meaning of a VECU, let alone one supporting Bag Riders' attorney argument that the VECU has to be located on the accused product. ECF 30, 5–7. This further confirms the falsity of Bag Riders' assertion that the VECU must be located within the accused product, not the vehicle as described by the '506 Patent. The Court should reject Bag Riders' proposal because it is based on Bag Riders' incorrect argument that the VECU must be within the accused product and not the automobile. ECF 30, 6.

Bag Riders' proposal is also incorrect because it seeks to replace the straightforward claim term "vehicle engine control unit" with a *46-word* construction containing numerous limitations that do not appear in the claim language or specification. ECF 30, 5–6. The only intrinsic evidence cited by Bag Riders—a few sentences out of the specification—does not support its proposal. *Id.* For example, Bag Riders' proposed construction requires the following limiting terms, none of which are found in the cited specification passage:

- "electronic control device"
- "comprising hardware and associated firmware"
- "receive input signals"
- "process the input signals"
- "using control logic"
- "generate corresponding control outputs"
- "regulate operation"
- "engine subsystems"

ECF 29, 20. Because the cited specification language does not support Bag Riders' proposal, the Court should reject it.

Moreover, the specification passage Bag Riders cites undermines its position because the specification does *not* require any of the language Bag Riders argues is necessary:

> VECUs, also referred to as powertrain control modules, are common among today's vehicles. The VECU is **capable of** controlling a wide variety of vehicle functions, such as air/fuel ratio, ignition timing, idle speed and valve timing. They **generally include** a microprocessor, which can process inputs from the engine sensors in real-time. **In one embodiment**, the microprocessor of the VECU is programmable.

ECF 30, 5 ('506 patent, col. 24, ll. 29–34) (emphasis added).

This specification language does _not_ define the term "vehicle engine control unit," nor does it express any intent to limit the term's scope. Instead, it merely describes capabilities and characteristics that VECUs _*may*_ possess. The passage states that VECUs are "capable of controlling" various vehicle functions, that they "generally include" a microprocessor, and that "[i]n one embodiment" the microprocessor is programmable. *Id.*; *see also, e.g.*, *Dealertrack*, 674 F.3d at 1320–24; *Rexnord*, 274 F.3d at 1345; *SanDisk*, 415 F.3d at 1284–85. Such permissive language confirms the specification describes optional capabilities and exemplary embodiments and does not define VECU. *See Thorner*, 669 F.3d at 1365. The Federal Circuit has repeatedly warned that it is "'one of the cardinal sins of patent law'" to read limitations from the specification into the claims. *Phillips*, 415 F.3d at 1320); *see also Liebel-Flarsheim Co. v. Medrad, Inc.*, 358 F.3d 898, 904 (Fed. Cir. 2004) ("[I]t is improper to read a limitation from the specification into the claims."). The cited specification passage therefore refutes Bag Riders' proposed construction.

Bag Riders advances its proposal not to resolve a genuine dispute regarding claim scope, but to support its non-infringement theory. *See Eon Corp. IP Holdings LLC v. Silver Spring Networks, Inc.*, 815 F.3d 1314, 1319 (Fed. Cir. 2016) (citation omitted) ("[C]ourts should not resolve questions that do not go to claim scope, but instead go to infringement or improper attorney argument"). The Court should reject Bag Riders' proposal and decline to construe this term.

**F. The Amundson Expert Affidavit Should Be Excluded**

The Court should exclude and refuse to consider Amundson's opinions because Bag Riders did not comply with Rule 26(a)(2)(B). Rule 26(a)(2)(B)(i) requires that an expert report "_*must contain*_ . . . a _*complete*_ statement of all opinions the witness will express _*and the basis and reasons for them*_." (emphasis added). The Amundson report does not state the basis and reasons for any opinion expressed therein. Instead, Amundson merely recites Bag Riders' proposed claim

constructions and concludes that they are "materially correct" and "consistent with the plain and ordinary meaning as understood by a person of ordinary skill in the art at the time of the invention." ECF 30-1, ¶¶ 6, 8. The report contains no explanation of how those conclusions were reached, no analysis supporting them, and no methodology tying the opinions to the intrinsic record.

Rule 26(a)(2)(B)(ii) provides that an expert report "*must contain* . . . the *facts or data* considered by the witness in forming" his opinions. (emphasis added). Although Amundson generally identifies some materials, he does not identify the facts or data upon which any opinion is based. ECF 30-1, ¶ 5. Nor does he explain whether or how those materials support the conclusions he reaches. *Id.* at ¶¶ 6–8. Amundson does not identify what those materials are, and provides no citations to the materials reviewed. *Id.* As a result, neither Air Lift nor the Court can meaningfully evaluate the factual basis for Amundson's conclusions.

Rules 26(a)(2)(B)(iv) and (v) provide that an expert report "*must contain* . . . the witness's qualifications, including a list of all publications authored in the previous 10 years" and "a list of all other cases in which, during the previous 4 years, the witness testified as an expert at trial or by deposition." (emphasis added). The report provides no relevant qualifications, no list of publications Amundson authored, and no list of cases where Amundson testified. Bag Riders never provided a copy of Amundson's CV, publication list, or testimony list. *See* ECF 30-1, ¶ 1.

Finally, Rule 26(a)(2)(B)(vi) provides that an expert report "*must contain* . . . a statement of the compensation to be paid for the study and testimony in the case." (emphasis added). Amundson acknowledges that he is "being compensated for [his] opinion" but does not disclose the compensation to be paid as the Rule expressly requires. ECF 30-1, ¶ 3.

Rule 37(c)(1) provides that "[i]f a party fails to provide information or identify a witness as required by Rule 26(a) or (e), the party is not allowed to use that information or witness to

supply evidence on a motion, at a hearing, or at a trial, unless the failure was substantially justified or is harmless." Bag Riders did not disclose or identify Amundson to Air Lift until it filed its brief, which is neither harmless nor substantially justified. *See GoPro, Inc. v. C&A Mktg., Inc.*, No. 16-CV-03590-JST, 2017 WL 2335377, at *3–4 (N.D. Cal. May 30, 2017) (striking claim construction expert report under Rule 37(c)(1)).

The Sixth Circuit has repeatedly affirmed exclusion under similar circumstances. *See R.C. Olmstead, Inc. v. CU Interface, LLC*, 606 F.3d 262, 268, 270 (6th Cir. 2010) (affirming exclusion of report that failed to comply with Rule 26(a)(2)(B) disclosure requirements); *Baker v. Blackhawk Mining, LLC*, 141 F.4th 760, 772–73 (6th Cir. 2025) (affirming exclusion of expert where report was incomplete, reached conclusions without disclosing supporting reasoning, failed to disclose considered facts and data, and omitted information required by Rule 26(a)(2)(B)). Like the report at issue in *Olmstead*, the Amundson report omits virtually all the information that Rule 26(a)(2)(B) requires a retained expert report to contain, and should be treated in the same manner.

As the Sixth Circuit explained in *Baker*, "[w]hen an expert disclosure is deficient under Rule 26(a), Rule 37 exclusion is 'mandatory unless there is a reasonable explanation of why Rule 26 was not complied with or the mistake was harmless.'" 141 F.4th at 773. Bag Riders offered no explanation for its failure to comply with Rule 26(a)(2)(B), nor could the deficiencies reasonably be characterized as harmless. Because Amundson disclosed neither the basis for his opinions nor the facts, data, qualifications, prior testimony, or compensation required by Rule 26(a)(2)(B), Air Lift had no meaningful opportunity to evaluate his opinions, prepare a response, or challenge his qualifications and methodology. Those same deficiencies deprive the Court of the information necessary to assess the reliability and admissibility of his opinions, precisely the prejudice Rules

26(a)(2)(B) and 37(c)(1) are designed to prevent. Accordingly, Rule 37(c)(1) and controlling Sixth Circuit authority require exclusion of Amundson and his report.

Even if the Court were to consider the Amundson report as extrinsic evidence despite its failure to comply with Rules 26, the report should be given no weight. The report consists of mere conclusory assertions that Bag Riders' proposed constructions are "materially correct" and "consistent with the plain and ordinary meaning as understood by a person of ordinary skill in the art at the time of the invention." ECF 30-1, ¶¶ 6, 8. It does not identify the factual basis for those expert opinions, explain the reasoning supporting them, discuss the intrinsic evidence in any meaningful way, or set forth any discernable methodology. *Id.*

The Supreme Court has cautioned that "nothing in either Daubert or the Federal Rules of Evidence requires a district court to admit opinion evidence that is connected to existing data only by the ipse dixit of the expert." *Gen. Elec. Co. v. Joiner*, 522 U.S. 136, 146, 118 S. Ct. 512, 519, 139 L. Ed. 2d 508 (1997). Likewise, the Federal Circuit has instructed that "[c]onclusory, unsupported assertions by experts as to the definition of a claim term are not useful to a court." *Phillips*, 415 F.3d at 1318. Accordingly, even if the Court declines to exclude the Amundson affidavit, it should be afforded no weight.

## III. <u>CONCLUSION</u>

Air Lift requests that the Court reject Bag Riders' proposed constructions, exclude the Amundson affidavit, and rule that the claim terms be afforded their plain and ordinary meaning.

Date: June 26, 2026

Respectfully submitted,

*<u>/s/ David B. Cupar</u>*
Mitchell A. Capp (P84197)
**McDONALD HOPKINS LLC**
39533 Woodward Ave., Ste. 318
Bloomfield Hills, MI 48304
Tel: (248) 656-5070 / Fax: (248) 646-5075
mcapp@mcdonaldhopkins.com

Dave B. Cupar (*pro hac vice*)
MCDONALD HOPKINS LLC
600 Superior Avenue, East, Ste. 2100
Cleveland, Ohio 44114
t 216.348.5400 | f 216.348.5474
dcupar@mcdonaldhopkins.com

*Counsel for Plaintiff Air Lift Company*